UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **TERESA RAVENSCROFT and DEBORAH RAVENSCROFT,**  Plaintiffs,  v.  **CSA TRAVEL PROTECTION AND INSURANCE SERVICES,**  Defendant. | Case No. 20-CV-020-JFH-JFJ |

## ORDER AND OPINION

Before the Court is the Motion for Summary Judgment [Dkt. No. 16] filed by Defendant CSA Travel Protection and Insurance Services ("CSA"). The case arises from a travel insurance policy for a February 2019 cruise booked by Plaintiffs Teresa Ravenscroft ("Ms. Ravenscroft") and Deborah Ravenscroft (collectively "Plaintiffs"). Plaintiffs did not originally purchase trip insurance when they booked their cruise. Instead, Plaintiffs purchased trip insurance from CSA after Ms. Ravenscroft visited the emergency room with unanticipated medical problems in January 2019. These medical problems continued and eventually Ms. Ravenscroft required surgery. Plaintiffs canceled their trip thereafter and submitted a claim for reimbursement. This suit resulted after CSA denied Plaintiffs' claim.

Plaintiffs assert claims for breach of the insurance contract and bad faith against CSA and seek actual and punitive damages. CSA moved for summary judgment on both of Plaintiffs' claims. Dkt. No. 16. Plaintiffs filed a Partial Response in opposition, along with a Supplemental Response. Dkt. No. 24; Dkt. No. 35. CSA filed a Reply. Dkt. No. 37. For the reasons set forth herein, CSA's Motion for Summary Judgment is GRANTED.

**STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "By its very terms, [the Rule 56] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The courts thus determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The non-movant's evidence is taken as true, and all justifiable and reasonable inferences are to be drawn in the non-movant's favor. *Id.* at 255. The Court's role at the summary judgment stage is not to weigh the evidence or resolve any disputed issues in favor of the moving party. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

**UNDISPUTED MATERIAL FACTS**

In 2018, Plaintiffs booked a cruise for February 2019. Dkt. No. 16 at 4, ¶ 1; Dkt. No. 24 at 2, ¶ 1. On January 4, 2019, Ms. Ravenscroft had a hiatal hernia repair surgery. Dkt. No. 16-2; Dkt. No. 24 at 2, ¶ 2. Two days later, on January 6, 2019, Ms. Ravenscroft returned to the emergency room with symptoms she believed to be complications from her hernia surgery. Dkt. No. 16-4. Ms. Ravenscroft described her January 6, 2019 emergency room visit and its subsequent follow-up as involving her doctors "[running] very many tests [] over the next several days trying

to determine the problem [and] what to do to fix it." *Id.* The complications were eventually identified as hemoptysis, hypotension, pleural effusion, and hemomediastinum. *Id.* at 2. On January 14, 2019, Ms. Ravenscroft had a second surgery. *Id.*[1] At some point, Ms. Ravenscroft was advised by her doctor not to travel for ninety (90) days. Dkt. No. 16-2.[2] On January 17, 2019, Plaintiffs cancelled their trip due to Ms. Ravenscroft's medical situation. Dkt. No. 16 at 5, ¶ 6; Dkt. No. 24 at 3, ¶ 6. Plaintiffs submitted a claim to recover for the cost of their cruise, which was received by CSA on February 20, 2019. Dkt. No. 16-4. CSA denied the claim [Dkt. No. 16-3] and Plaintiffs appealed but did not submit additional documentation [Dkt. No. 16-5].

Plaintiffs did not purchase travel insurance when they originally booked their cruise. Instead, they purchased a travel insurance policy from CSA on January 7, 2019—one day after Ms. Ravenscroft's emergency room visit. *See* Dkt. No. 16-3; Dkt. No. 16 at 4, ¶ 4, Dkt. No. 24 at 2, ¶ 4. The policy went into effect the following day on January 8, 2018. Dkt. No. 16 at 4, ¶ 4; Dkt. No. 24 at 2, ¶ 4. The policy provides trip cancellation benefits for losses due to unforeseeable and specific, listed events that include sickness and injury. However, the policy sets out various

---

[1] The parties dispute whether the second surgery, a thoracotomy, was a complication or condition associated with the hernia surgery or a separate new condition. *Compare* Dkt. No. 35 at 3, ¶ 13 *with* Dkt. No. 37 at 2, ¶ 8. For the reasons explained in the Court's analysis, this disagreement need not be resolved as it does not involve an issue of material fact. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

[2] The parties dispute when Ms. Ravenscroft was advised not to travel for ninety (90) days. CSA contends that she was advised of this on January 6, 2019. Dkt. No. 16 at 3; Dkt. No. 16-2. Plaintiffs contend that she was not advised of this until January 19, 2019. Dkt. No. 24 at 2, ¶ 4; Dkt. No. 16-2. The record indicates Ms. Ravenscroft may have been advised not to travel on other dates. *See e.g.* Dkt. No. 16-4 (suggesting Ms. Ravenscroft was told not to fly 2 days following her January 14, 2019 surgery and then cancelled the trip on January 17, 2019). An unnotarized affidavit from Ms. Ravenscroft's treating physician suggests that he told her not to travel on January 14, 2019. Dkt. No. 36. However, as explained in the Court's analysis, the dispute as to when Ms. Ravenscroft was advised not to travel need not be resolved because summary judgment is appropriately decided without its resolution.

conditions for coverage including that: "[t]he Sickness or Injury must first commence while your coverage is in effect under the Policy, must require the in-person treatment by a Physician, and must be so disabling in the written opinion of a Physician as to prevent you from taking your Trip . . . ." Dkt. No. 16-3 at 1. The policy also specifically excludes coverage for three relevant circumstances: (1) a Pre-Existing Condition (defined to include "a Sickness or Injury during the 180-day period immediately prior to your effective date for which you . . . received, or received a recommendation for, a diagnostic test, examination, or medical treatment . . . ."); (2) "an illness, disease, or other condition, event or circumstance which occurs at a time when coverage is not in effect for you;" and (3) "any issue or event that could have been reasonably foreseen or expected when you purchased the coverage." *Id.*

## ANALYSIS

### I. Breach of Contract Claim

Under Oklahoma law, an insurance policy is treated as a contract and enforced according to its terms. *Equity Mutual Ins. Co. v. Spring Valley Wholesale Nursery,* 747 P.2d 947, 953 (Okla. 1987); *Davis-Travis v. State Farm Fire & Cas. Co.*, 336 Fed. Appx. 770, 772 (10th Cir. 2009) (unpublished).[3] Where an insurance policy is not ambiguous, it is construed according to its terms. In order to recover on a breach of contract theory, the Plaintiffs must prove: (1) formation of a contract; (2) breach of the contract; and (3) damages as a direct result of the breach. *Digital Design Group, Inc. v. Information Builders, Inc.*, 24 P.3d 834, 844 (Okla. 2001).

The parties agree that a contract was formed when Plaintiffs purchased a travel insurance policy on January 7, 2019. Dkt. 16 at 4, ¶ 4; Dkt. No. 24 at 2, ¶ 4. Plaintiff contends that CSA

---

[3] This and all other unpublished decisions are not precedential; they are cited for their persuasive value only. *See* Fed. R. App. 32.1; 10th Cir. R. 32.1.

4

breached the contract by improperly denying coverage. CSA contends that it did not breach the contract because it properly denied Plaintiffs coverage under the terms of the policy for three reasons: the policy was not in effect at the time of the sickness causing the loss; Ms. Ravenscroft had a pre-existing condition precluding coverage; and the loss was foreseeable. Dkt. No. 16 at 7-8; Dkt. No. 16-3; Dkt. No. 37 at 5. The Court agrees.

CSA points to Ms. Ravenscroft's January 4, 2019 surgery—which had been planned since 2018—as her pre-existing condition. *See, e.g.,* Dkt. No. 16 at 8-9; Dkt. No. 26 at 2. While Plaintiffs do not dispute the definition of "Pre-Existing Condition" under the policy, they dispute that Ms. Ravenscroft's first surgery fell within that definition. Dkt. No. 24 at 2, ¶ 5. Plaintiffs contend that "the important distinction that is lost on Defendant is that [Ms. Ravencroft's] hernia [for which she had surgery on January 4, 2019] was not the cause of the trip cancellation." *Id.* at 3. Plaintiffs claim that "unexpected complications following the surgery which eventually affected [Ms. Ravenscroft's] hypertension (high blood pressure) and resulted in a pleural effusion (fluid in lungs)" necessitated the trip cancellation, not the surgery itself. *Id.* at 3. Alternatively, they argue that Ms. Ravenscroft's second surgery on January 14, 2019 necessitated the trip cancellation and this event occurred after coverage went into effect on January 8, 2019. *Id.*

The parties' specific focus on either of the two surgeries misses the most significant undisputed fact here: the condition which led to Ms. Ravenscroft's surgery on January 14, 2019, and ultimately resulted in Plaintiffs' cancellation of their trip, had arisen by January 6, 2019. Whether this condition was the result of complications from Ms. Ravenscroft's January 4, 2019 surgery or was an entirely new condition is immaterial. It is undisputed that Ms. Ravenscroft's condition, from which she began to suffer on January 6, 2019, was eventually identified as hemoptysis, hypotension, pleural effusion, and hemomediastinum. Dkt. No. 16-4 at 1-2. It is

further undisputed that this condition not only led to her second surgery, but ultimately caused Plaintiffs to cancel their trip. *Id*.

Ms. Ravenscroft described her condition on January 6, 2019, and the sequence of events that followed, in her own words on Plaintiffs' claim form as follows:

> On the evening of Jan 6 I was feeling very week [and] had low BP so I went to ER after calling my surgeon. They ran very many tests [and] over the next several days trying to determine the problem [and] what to do to fix it. Finally determined to operate on lungs on 14th of Jan 2019. When I spoke to surgeon the following 2 days, I was t[o]ld not to fly for 90 days. Trip was then canceled on 17 Jan 2019.

Dkt. No. 16-4 at 1.

### A. Pre-Existing Condition

The policy language before the Court[4] makes clear that coverage is excluded for a "Pre-Existing Condition" defined as "a Sickness or Injury during the 180-day period immediately prior to your effective date for which you . . . received, or received a recommendation for, a diagnostic test, examination, or medical treatment . . . ." It is undisputed the policy went into effect on January 8, 2018. Dkt. No. 16 at 4, ¶ 4; Dkt. No. 24 at 2, ¶ 4. As noted above, it is undisputed that Ms. Ravenscroft developed sickness or injury on January 6, 2019 for which she received testing, examination and medical treatment, including surgery, which rendered her unable to travel.[5]

---

[4] The Court notes with disapproval that neither party to this breach of contract suit made the key piece of evidence—the contract itself—part of the record in its summary judgment briefing. Nevertheless, the undisputed policy language quoted in the denial of claim letter, which was incorporated into the record [Dkt. No. 16-3] (without any dispute as to such policy language), is a minimally sufficient basis for the Court's ruling.

[5] Plaintiffs attempt to evade the consequence of the timing of Ms. Ravenscroft's sickness by omitting reference to her January 6, 2019 emergency room visit from Dr. Phillips' unsworn Affidavit. Dkt. No. 36. Instead, Plaintiffs would have the Court focus on a January 9, 2019 hospital visit. *Id*. But the record could not be any more clear that Ms. Ravenscroft's January 6, 2019 emergency room visit, her January 9, 2019 hospital visit and her January 14, 2019 surgery were related to the same sickness or injury. *See* Dkt. No. 16-4 at 1-2.

Because Ms. Ravenscroft's sickness or injury constitutes a "Pre-Existing Condition," coverage under the policy was excluded.

### B. Occurrence of Illness When Policy Not in Effect

The policy, which went into effect January 8, 2019, sets out various conditions for coverage including that: "[t]he Sickness or Injury must *first commence* while your coverage is in effect under the Policy . . . ." Dkt. No. 16-3 at 1 (emphasis added). The policy specifically excludes coverage for "an illness, disease, or other condition, event or circumstance which occurs at a time when coverage is not in effect for you." Because, as explained above, Ms. Ravenscroft's sickness or injury first commenced on January 6, 2019, at a time when the policy was not in effect, coverage under the policy was excluded.

### C. Foreseeability of Event

The policy also excludes coverage for "any issue or event that could have been reasonably foreseen or expected when you purchased the coverage." Dkt. No. 16-3 at 1. It is undisputed that Ms. Ravenscroft was a patient in an emergency room on January 6, 2019 and purchased trip insurance the very next day. The temporal nexus between Ms. Ravenscroft's emergency room visit and purchase of trip insurance alone suggests that the cancellation of the trip due to medical issues could be reasonably foreseen. However, the Court need not decide this issue.

Coverage was not available for "an illness, disease, or other condition, event, or circumstance which occur[ed] at a time when coverage [was] not in effect." Dkt. No. 16-3 at 1. In Ms. Ravenscroft's own words from Plaintiffs' claim form, her emergency room visit involved "very many tests," which continued "over the next several days [as doctors tried] to determine the problem and what to do to fix it" until the doctors "[f]inally determined to operate on [her] lungs." Dkt. No. 16-4 at 1. Regardless of any connection or lack thereof between Ms. Ravenscroft's

January 4, 2019 and January 14, 2019 surgeries (the latter of which is only relevant insofar as it was the culmination of treatment for the symptoms Ms. Ravenscroft experienced on January 6, 2019), and regardless of when she was advised not to travel, Ms. Ravenscroft had an unresolved "illness, disease, or other condition, event or circumstance" beginning on the day before she purchased trip insurance. The condition had already commenced before the policy came into effect, was still being diagnosed at the time the policy came into effect, and foreseeably continued for several days after the policy came into effect. This uncontroverted evidence clearly shows that CSA properly denied Plaintiffs coverage under the parties' policy and did not breach the contract. Summary judgment is proper.

### II.   Bad Faith Claim

"[A]n insurer has an implied duty to deal fairly and act in good faith with its insured and the violation of this duty gives rise to an action in tort . . . ." *Christian v. American Home Assur. Co.*, 577 P.2d 899, 904 (Okla. 1977). The elements of a bad faith claim are:

(1) The insurer was required under the insurance policy to pay the insured's claim;

(2) The insurer's refusal to pay the claim in full was unreasonable under the circumstances because it:

  a. had no reasonable basis for the refusal;

  b. did not perform a proper investigation; or

  c. did not evaluate the results of the investigation properly;

(3) The insurer did not deal fairly and in good faith towards the insured; and

(4) The insurer's violation of its duty of good faith and fair dealing was the direct cause of the injury sustained by the insured.

*Duensing v. State Farm Fire and Cas. Co.*, 131 P.3d 127, 138 (Okla. App. 2005); *see also* Oklahoma Uniform Jury Instruction – Civil 22.2.

> Oklahoma law has also recognized that the mere allegation of an insurer's breach of the duties of good faith and fair dealing does not automatically entitle a litigant to submit the issue to a jury for determination: a jury question arises only where the relevant facts in dispute or where the undisputed facts permit differing inferences as to the reasonableness of the insurer's conduct.

*City Nat. Bank & Trust Co. v. Jackson Nat. Life Ins.*, 804 P.2d 463, 468 (Okla. App. 1990) (citing *Duckett v. Allstate Ins. Co.*, 606 F. Supp. 728, 731 (W.D. Okla. 1985)). Before submitting a case to the jury, the trial court must first determine, under the facts of the particular case and as a matter of law, whether the insurer's conduct may be reasonably perceived as tortious. *Id.*

Here, Plaintiffs' bad faith claim fails in the first instance because CSA was not required under the insurance policy to pay Plaintiffs' claim. Further, under Oklahoma law, an insurer's denial of coverage is not unreasonable or in bad faith when a legitimate dispute regarding coverage exists. *See Ball v. Wilshire Ins. Co.,* 221 P.3d 717, 725 (Okla. 2009) ("If there is a legitimate dispute concerning coverage . . . withholding or delaying payment is not unreasonable or in bad faith."); *Duensing,* 131 P.3d at 138; *see also Manis v. Hartford Fire Ins. Co.*, 681 P.2d 760, 762 (Okla. 1984) ("A [bad faith] cause of action will not lie where there is a legitimate dispute.").

Here, CSA had three legitimate reasons for denying Plaintiffs' claim: pre-existing condition; policy not in effect at time of loss; and foreseeability. *See* Dkt. No. 37 at 5; *see also* Dkt. No. 16-3. The information available to CSA at the time of denying the Plaintiffs' claim was that Ms. Ravenscroft became unable to travel on January 6, 2019 due to post-operative complications. *See* Dkt. No. 16-2. Furthermore, when Plaintiffs appealed CSA's decision, they did not provide any additional documentation. The record demonstrates a legitimate dispute existed regarding coverage. Under the facts of this case, the insurer's conduct may not be reasonably perceived as tortious. Therefore, summary judgment in CSA's favor as to the bad faith claim is appropriate.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment [Dkt. No. 16] filed by Defendant CSA Travel Protection and Insurance Services is **GRANTED.**

DATED this 3rd day of September 2021.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE